The next case this afternoon is Sisto v. United States. I see one lawyer. I think we're about to get another one. I now see both lawyers. Can you hear me, both of you? Raise your hand if you can. Yes, Your Honor. You can? Yes. Okay. The next case, and our only other case on the calendar, argument calendar this afternoon, is Sisto v. United States. I think it is Ms. Sisto, Mr. Abney that goes first. When you're ready. We've read the briefs. Looking forward to your argument. Thank you, Your Honor. May it please the Court, my name is David Abney. I'm representing the survivors of Tyrone Sisto. He went for medical care to the San Carlos Apache Healthcare Corporation Hospital in Peridot, which is a very small town in a very big reservation. It's 1.8 million acres, founded in 1872 by a decree of President Grant. It spreads over three counties, sort of a weird butterfly shape, only has about 16,000 or so tribal members, and of those, somewhere between 10,000 and 11,000 live in the reservation at any particular time. But the hospital that the tribe arranged to have for them there is very important to them. It's their center of healthcare. They would have to go a long, long way to get any better care. Unfortunately, Tyrone got bad care the day he went. It was in August of 2017. He was exhibiting symptoms of Rocky Mountain Spotted Fever. Unfortunately, Dr. Ricky Gross decided that it was a viral problem instead of bacterial, which is what the fever is. Didn't treat him for that, and three or four days later, Tyrone died. We're not quite sure because his body was found. We're not quite sure when he died. It was a preventable death. Can I ask you just a question that I don't know that has anything necessarily to do with this case, but why couldn't your clients just sue the doctor and his immediate employer, this tribal EM? Is that the name of the entity? Yes. They thought that he was covered by the Federal Tort Claims Act, which would make it exclusive. At least that was the thinking of the lawyer who handled the case and still handling the case. He thought that because, as he read the regulations and the statute, that this doctor was covered by the FTCA, and that would make it an exclusive FTCA problem. So that's why he went with the FTCA. After the rather shocking opposition from the government, he has filed a parallel lawsuit in state court, which is basically just sitting there waiting to decide what happens here. In case this case doesn't, in case this appeal doesn't work, he will use the Arizona Savings Statute because the statute of limitations is a long one, but he used the Arizona Savings Statute to keep that case viable and active against the doctor's estate. Dr. Gross has since died, and the claim would be against his estate. Why wouldn't it also be not only against Dr. Gross, but also against Dr. Gross's employer? I believe it's also against the employer. His original understanding was that if Dr. Gross is covered by the FTCA, that's where you have to go. You have to go through the process of the FTCA, do the notice of claim, and then go forward. This is a confusing tangle for me anyway, maybe not for three such great legal minds as you are. I made the mistake of reading your biographies, and I'm thoroughly intimidated right now, but it's very hard to navigate through these regulations and statutes. So in preparing for the briefing, I went back to basics and went through every single one to try to make sure where we were. It seemed to me that if you get down to brass tacks, the regulation that really applies, first and foremost, is 25 CFR section 900.199. It's fairly straightforward. It's one of these plain language regulations that the government's come up with. I forget who came up with it, Jimmy Carter or somebody came up with the idea of trying to do these in plain language. This one actually works pretty well. It asks the question, if coverage extends to a health care practitioner, which is what Dr. Gross was, to whom staff privileges have been extended, and they were extended to them, in contractor health care facilities, and that fits the hospital under reservation, operated under a self-determination contract, everybody admits that applies, and then the last thing is on the condition that the practitioner provide health care services to IHS beneficiaries covered by the FTCA, and that would apply to Tyrone Sisto. Can I ask you, it just helped me understand the purpose of this, because I assure you, you know this regime much better than I do. I agree it's very confusing. But as I understand it, the purpose of a regulation like 900.199 is to essentially save the tribal entities the cost of having to procure malpractice insurance? Is that what's going on? We're basically going to put the United States in there as a backstop, and so therefore you don't have to go out and purchase malpractice insurance. Is that what's really sort of driving this? That's one of the main drivers, and I think that may be the main driver, plus you don't have to worry about the hassle of hiring the lawyer and dealing with that. The government steps up to bat for you. Okay, but so then I agree with you that this regulation you've identified is your strongest argument, but isn't it contemplating a situation where the hospital, let's just call it the hospital, the hospital is kind of engaging directly with the medical provider, and so in that scenario the hospital would very much be worried if they had extended staff privileges to this doctor and something went wrong. The hospital would very much be on the hook, and so that's why this regulation steps in and says don't worry, the United States will cover this. Whereas our situation, of course, involves an intermediary entity, this tribal EM, the employer of Dr. Gross, and one of the conditions of that contract was that, hey, you tribal EM, you're going to go out and buy malpractice insurance, so we don't have to worry about it. And it seems like that scenario just seems somewhat removed from the purpose of 900.199. So can you help me understand how that all plays out? Well, I can try. One thing before I get into the bulk of this is that the regulations and statutes are all considered to be part of the contractual arrangements here. But what the doctor was doing, to get more directly to the problem, what the doctor is doing, he's working directly for the hospital and he's working with his medical practice at the same time. This is not unusual to have somebody who's a dual employee or dual agent, which is really what he was. And, of course, ultimately he's working for the patients. But as far as the only way he's at that hospital is that he was granted the staff privileges by the hospital. Staff privileges are not granted to a practice. Practices do not get them. The individual health care providers get the staff privileges. Now, can I interrupt for just a minute? Can I interrupt for just a minute? You said he's working for this, I've got to get it right, the T-EM, but he's also working for the hospital. Was he being paid by both? Or when you say working only in a more sort of lay sense, who is he being paid by? I believe he's being paid by his practice, which is getting its money through the hospital. But as far as what he's doing, who is in charge ultimately of what he's doing is the hospital. That's who he's working for in the emergency department. He was providing services for the hospital to the tribal members at the hospital's emergency department. What do we do with the agreement in which it's very clearly spelled, the agreement between T-EM and S-C-H-A-C, pardon me for the alphabet soup stuff, but the agreement very specifically says nothing in this agreement shall be construed as creating an employer-employee relationship with Dr. Gross. Yes, and I know it says that. But then again, I believe you have to look at the reality of the situation as well as the fact that the statutes and regulations apply and are included into part of the contract. So the reality is that this regulation, as you say, the best argument, regulation, it's very specific and applies directly here, and it would cut through, supersede any contrary provision in the contract. And I believe that's what's happened here. You also get to... Can I ask you a question about the insurance issue that Judge Watford raised? The contract says that in the event that T-EM is non-insured under the Federal Tort Claims Act, T-EM at its sole cost and expense shall purchase and maintain the following at least the types of insurances. Did T-EM in fact procure those insurances here? As far as I know, it did not. But my knowledge is not perfect, but as far as I understand the record, no. The other thing that has come up as to whether this is a personal services contract, there's some regulations that would make the doctor subject to the FTCA if this is a personal services contract. This is one thing where I still don't know if I got the right answer or not. In common parlance, black-slaw dictionary, common sense, a personal services contract is someplace where you have an individual relationship between someone who's giving a service and somebody who's receiving it. It's of a very intimate nature. I think that the doctor-patient relationship would fit within a personal services contract. I couldn't find any very good regulation on this. I couldn't find one relating to the Indian health care system for sure. Is there any case that, because this is a phrase that occurs in other contexts, are there any cases that you're aware of where a personal services contract has been held to include a contract with an entity that employs other persons? I don't specifically recall seeing that. What I do recall is staying up late at night, night after night, trying to find something. All that I found, I believe, I put into my brief. I didn't leave anything out because the fruits of my labor are in the brief as far as what a personal services contract is. The one regulation that may help the court, because it's in the Code of Federal Regulations, is the one I cited. It's 48 CFR 37-104, subparts A and especially subpart D. It talks about various elements that are a guide to determining whether you have a personal services contract. There's six elements, and number six has three sub-elements. If you go through those one by one, I believe- That regulation, doesn't that cut against you? Because as you quote in your brief, it says, a personal services contract is characterized by the employer-employee relationship it creates between the government and the contractor's personnel. But here the contract quite explicitly disavows such an employer-employee relationship. Well, that contract is subject to this regulation as well. And the employee-employee relationship that I believe was created between the tribal health entity and the doctor is a personal services sort of contract. It falls within this regulation and the other regulations that are more specific to the provision of care to the tribal members. So that would apply, that would supersede what's in the contract. The contract has some interesting boilerplate language, but the boilerplate language cannot overcome regulations and statutes that are to the contrary. And I'll have to stand on that one regulation. Here's a problem I have with the regulation. If I were to read the regulation 900.199 by itself, you win. But I've got to read it- Oh, thank you. Well, there's a but, right? Of course. But I've got to read it in context. It's an implementing regulation for the statute. And the statute, and I think the relevant piece of the statute, is 1680C, parent E, parent 1, which says that non-service health care practitioners may, as part of the privileging process, be designated as employees of the federal government for the purpose of the Federal Drug Claims Act only with respect to affirmations that occur in the course of providing services to eligible individuals as part of the conditions under which such hospital privileges are extended. Well, as I read the case that we've got here, the hospital privileges are extended pursuant to the contract between the tribal entity and TEM. And that contract says he's not an employee. So I view the 900.199, the CFR regulation, as trying to implement that and as a kind of an approximate shorthand which will cover most cases, but maybe not this case. How do you respond to that? Well, I think the regulation was- I think the drafters of the regulation intended it to supersede anything else to the contrary, to cut and make this as basic and as straightforward and as simple as possible. But they can't contravene the statute, though. I don't think there's a contradiction. If the statute was talking about designating, and here there has been a designation by conduct and a designation by the granting of hospital staff privileges and creating a situation where there is a personal services contract, I believe that's the kind of designation the statute can be interpreted as involving. And that gets you down to the point, well, with the agency in charge of making the regulations, well, how do we interpret and apply this? Well, we come up with this regulation that is a plain language guide for anybody who reads it, can understand it, as you said. If you look at it by itself, it makes perfect sense. But if you read it in the bigger context of trying to make sure that proper health care is being provided and that the Indian health institutions are not burdened with malpractice suits, malpractice insurance, having to deal with lawyers, God forbid, it all works together very well and means that Ricky Gross was indeed a subject to the Federal Tort Claims Act, and the government is still subject to that, even despite the fact that he is deceased. Okay. If I may reserve my... Yeah, yeah, we've taken you almost to the end of the time. Let's hear from the government and we'll make sure you get a chance to respond. Thank you, Ron. I appreciate it. Good afternoon. My clock hasn't started yet. Well, if you start talking, I bet the clock will start. There it goes.  I don't want to lose sight of the fact that this is a Federal Tort Claims Act case, which means that the United States has sovereign immunity, which is only abrogated in a limited number of circumstances, and the plaintiff... Let me ask you a factual question to you that I asked your opposing counsel, and that is, did TEM acquire the insurances that are listed in that contract provision that I referenced? Yes, Your Honor. There's a certificate of insurance that's part of the record in this case, and it's mentioned in the briefs. And it covers the three types of insurance that are listed there? It does. The insurance policy was specifically for Ricky Gross. There was one policy for each of the TEM providers that TEM purchased. I don't think that's dispositive on this case, but it is a very important factor for the control test, which is dispositive in this case. I don't even think the appellant has made any attempt to argue that there was... The control test does not go in the government's favor on this case. Does the control test even apply here in this unique statutory regime? Because my understanding is under the control test and under, you know, what is the case, Carillo, we wouldn't treat a doctor, even one with a personal services contract, as being an employee because of a lack of control. But this regime clearly is to the contrary to that. Am I misreading that? Well, so the contention here is that the statutes that are a part of the ISDEAA, the Indian Health Service contract with the San Carlos Apache tribe, the contention here by the plaintiffs in this case is that those statutes in the ISDEAA supersede the independent contractor exception to FGCA coverage. And that creates a dichotomy in that they're essentially admitting that had this directly been an Indian Health Service hospital, those statutes would not apply and there would be no FGCA coverage. So what we're looking at here are specific statutes within the ISDEAA. And the only statutes that have been identified are 25 U.S.C. 1680C and 25 U.S.C. 5321. My point about the control test is that Carillo cites on page 1304, it cites cases for the proposition that a civilian physician contracted as consultant to perform emergency surgery is not covered because of the control test. But this regime clearly would cover such a doctor because that would be a personal services contract, wouldn't it? If there was a personal services contract. Right. But there isn't a contract at all. Exactly. So the question is whether there's a personal services contract. Control has nothing to do with this. The control test would yield a different result than this statute does. So this statute isn't following the control test. If there's a personal services contract, regardless of the lack of control, it's within the statute, right? Your Honor, I think you're correct that if there was a personal services contract, the control test would not matter. But since there is no such contract, the control test in this case had to be applied, and the district court judge did so. Does a personal services contract have to be individual and personal, or can it be a group contract? We have a personal services contract that covers the practice group for a bunch of doctors. The statutes within the ISDA describe a personal service contract as a contract with an individual, not with a corporation. Then why does the regulation that excludes subcontractors carve out personal services contracts as an exception? If personal services contracts, by definition, are individual, why would you create an exception to the subcontractor rule for individual services? It makes no sense. The rule wouldn't cover them, so there's no need for the exclusion of surpluses. I'm talking about 189. The 900.189 says subcontractors or subgrantees providing services to a 638 contractor are generally not covered. The only exceptions are, there's a special exception for California, and then personal services contracts under 193. But if they're individual, by definition, according to your position, I don't understand why they're an exception to the subcontractor rule. Your Honor, not every contract with an individual qualifies as a personal services contract. Right, but if by definition a personal services contract is always an individual contract, then why is it listed as an exception to a rule excluding subcontractors? This is a subcontractor case. That rule would apply here to bar this situation, and the question is whether or not it falls within the exception. I don't understand why there's a carve-out from subcontractors for individual contracts. It doesn't seem to make any sense if we read it that way. So I'm not sure, Your Honor, if I'm approaching this the correct way, but in the facts of our case, I think what you're asking is who is the subcontractor, and the subcontractor is TEM. Correct. And TEM is excluded by that rule, but then there's an exception that says, notwithstanding the fact that we've excluded subcontractors, you're covered if it's a personal services contract. Correct. So the subcontractor under the regulation 900.189 need not necessarily be a corporation. It could be an individual. And that individual subcontractor would not be covered because of the independent contractor exception unless that person was a personal services contractor. And personal services contracts within the ISDAA, they're designated as personal services contracts, and they're between an individual and the contracting entity, which is a tribal entity. So one of the reasons why this particular regulation, 900.189, seems in some ways it's not necessary is because when you look at the purpose of this subpart M of part 900 within the Title 25 of CFR, what's going on here is that the agency is trying to do a frequently asked questions regulation for the tribal entities, and some of those frequently asked questions are addressed in these regulations. I want to direct the court's attention to the fact that every single one of these regulations lists an authority, which is the ISDAA. So the ISDAA, as the controlling statutory basis for the regulations, is what we should be looking at. It is indeed what the associate court looked at in the Tenth Circuit. When it was addressing this particular statute. You can't unmoor the regulation from the statute itself. So I want to talk first about the statute, 1680C, subpart E, number 1, and these are listed within, or written in the briefs. But I think it's important to note that they say that this particular statute says, as the associate court pointed out, that FTCA coverage may be extended to non-service healthcare practitioners. And non-service healthcare practitioners include independent contractors, but it may be extended only under certain circumstances. The circumstances are not met in this case, but what the associate court, the Tenth Circuit associate court was saying was that the fact that this says that it may be extended means that there are circumstances in which FTCA coverage is not extended. But why wouldn't we read the regulation as basically taking up the invitation there in the statute to designate a group of healthcare practitioners who are going to be treated as employees of the, whatever it is, of the United States in essence. Because I just read the statute as saying, in the circumstance where you're being granted privileges in exchange for your agreement to treat, is it IHS beneficiaries? I don't have the terminology at the tip of my tongue. But when that exchange is made, then in that circumstance you can be designated as an employee, you know, who will get FTCA coverage. And why doesn't the regulation just do that in gross, in essence, for this entire category of people? Because I don't think there's any dispute that our doctor here does fit within the plain language of that regulation. Right. So why isn't he just kind of swept up as part of this group of people whom the agency that issued the regulation has decided under that statute, these people are going to be designated as such. Your Honor, I completely disagree that Dr. Gross is covered by this particular statute. Dr. Gross did not go through any privileging process whatsoever. So the entire condition that gives the opportunity... Did he have staff privileges at the hospital? I'm sorry? Did he have staff privileges at the hospital? He did have staff privileges. But Judge Wofford's point is that 199, which says healthcare practitioners with staff privileges in a facility covered, implements the statute. So if that's the privileging process, it's the granting of the staff privileges. How else does it not fit the statute? Your Honor, in a privileging process, there is an agreement between the doctor and the hospital. And in this case, no such agreement exists. There is simply a privilege granted to the employees of TEM. So what the statute says is that during the privileging process, the practitioner may be designated as an employee of the federal government with respect to acts or omissions, etc., etc. That is, there has to be a designation. And in this case, there is no such designation that he is an employee of the federal government for any purpose whatsoever. The only contract we have and the only document... It says that it can't be done in Gross. That was Judge Wofford's question. You mean done? I guess I don't understand the question. The regulation says if you get staff privileges at a hospital run by a tribal entity, then you will be covered by the FTCA if you're serving IHS beneficiaries. It seems to line up with the statute, so they think they're doing something for the privileges that are referenced in that regulation, which seems to do it on Gross. I think there is another case that was very similar within the District of Arizona. It was also called SOSI. It was a different SOSI case in the trial court. And in that case, the factual circumstance was that there actually was a privileging process with the doctor. There actually was a background check and documents signed with the physician. And the court then concluded, based on that fact, that this applied. But in our case, there is no agreement whatsoever between the government, as represented by the tribal entity, and Dr. Gross. So this statute cannot possibly apply without any agreement. Is the regulation invalid in your view? No, the regulation is perfectly... The regulation is fine. The problem is that counsel for the plaintiff only reads part two. The answer means absolutely nothing if you completely divorce it from the question. And the question is framed in the exact terms of the statute. I think your answer may in part be one that you're kind of dancing around. And that is, there was a privileging process that took place here. Otherwise, of course, he couldn't practice at the hospital. But the privileging process was incorporated into the agreement between the hospital and TEM. That's how he got the privileges, was once the contract was signed. That gave privilege to all employees, all of what they called the TEM providers. And that's the privileging process. I think that's your answer. In case you didn't recognize it, that was a softball that was designed to help you. Thank you, Your Honor. I've passed my time. If there are any further questions, I'd be happy to answer them. Well, I'm not sure I want to just let mine just sit there. Because I do have a question. If we've got a statute that's a little bit complicated, which this one is. And I read it the way I just read it. That seems to me the most plausible reading once I've read it five times. But then I've got a regulation that if I read it only once, seems to me that the plaintiff wins. I don't really much like where I end up here. Well, the answer is that the regulation cannot go beyond the confines of the statute. The regulation cannot create a circumstance in which a tribal entity waives the United States' sovereign immunity by virtue of contracting for someone else to perform the privileging process. Okay. Well, got it. Any further questions from the bench for Mr. Heathcote? Mr. Abney, we took you basically almost to the end of your time. Why don't we put two minutes on the clock? I want to make sure you get a chance to say everything you need to say. You're muted. Thank you, Your Honor. I was sort of hoping for 20 minutes, but two minutes is great. Well, you get to say as much as you need to say for your client here.  Thank you, Your Honor. I appreciate that. A number one thing is to apologize to Judge Collins about misremembering about the insurance. I don't know how that slipped my mind. I went and glanced at the briefs, and there it is sitting like a 10-day-old turnip right in front of me, so I apologize for that. You were talking about you've got a complicated, hard-to-understand statute. You've got an easy-to-understand regulation. I would refer the Court to Occam's razor, that the simplest answer is usually the best one and the right one, too. I just checked that in my dictionary to make sure I was getting that right. I think the maybe-designated language in the statute can be interpreted as maybe designated by a regulation or by another statute or by a custom or a practice. As far as staff privileges themselves, I don't think it really matters how Dr. Gross got the staff privileges. The usual method is for the hospital to award them after thinking a bit and investigating and trying to decide if this doctor really should be granted staff privileges, but if it was done in a batch through an agreement or if it was done individually, the end result is that the doctor ends up with the staff privileges. When I started off our discussion today, I went through the regulation. I wasn't shading anything. What I started was I read the regulation, the first part, which is the question. I just didn't do it in a question form, but every element there of the question is there. If you read it as a question, does the FTCA coverage extend to healthcare practitioners to whom staff privileges have been extended in contractor healthcare facilities operated under a self-determination contract on the condition that such practitioner provide health services to IHS beneficiaries covered by the Federal Tort Claims Act. Every step along the way, it fits Dr. Gross. I'm glad and a little anxious when the discussion turned to 189. I had a long section in the briefing about that, six different reasons why 189 was not destructive of the case. One of the reasons being, number six was being that there's a personal services contract arrangement here. I believe one of the most important points is that Dr. Gross was indeed working as a dual agent or a dual employee. He was working for the healthcare corporation. He was also working with the individual practice. His first allegiance, of course, is to the patient, but allegiance number two has got to be to the hospital that is running his emergency room. He's got to be complying with hospital regulations and rules, practices, and customs or he's not going to be working there for very long at all. I believe he really is a dual agent, dual employee. When you get right down to it, when you get down to basics, the whole point of all this is that there should be Federal Tort Claims Act coverage to doctors who are granted privileges, staff privileges, to treat tribal members at tribal hospitals. That makes perfect sense. Everything ties in together, and there should be FTCA coverage in this case. Okay, thank you very much. Thank both sides for their useful arguments. SISTO versus the United States is now submitted for decision, and that completes our arguments for the afternoon. Thank you. Thank both of you very much. Thank you, Your Honors. We're now in adjournment. Thank you. Thank you. All rise. This court for this session stands adjourned.
judges: W. Fletcher, Watford, Collins